JOHNSON, APPELLANT, *v.* OPHEIM, RESPONDENT.

(No. 4,941.)

(Submitted January 8, 1923. Resubmitted March 22, 1923. Decided April 25, 1923.)

[214 Pac. 951.]

*Accounting — Deed Absolute — When Mortgage — Burden of Proof—Compromise and Settlement — Effect on Remaining Indebtedness.*

Deed Absolute—When Mortgage.
1. Where title to property belonging to one person is held by another as security for indebtedness of the former, the transaction is in legal effect a mortgage regardless of its form.

Same—When Mortgage—Burden of Proof.
2. One who asserts that a deed absolute upon its face is in fact a mortgage must prove it by clear and convincing evidence.

Same—Settlement of Complex Accounts—When Transfer Absolute.
3. For the purpose of securing a loan and subsequent advances, the owner of a dairy ranch executed an absolute deed of his prop-

---

2. Parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage or pledge, see note in L. R. A. 1916B, 18.

[67 Mont. 126.]

erty to the lender. Payment not having been made the latter bought the property at foreclosure, the understanding between the parties being, however, that title should remain in the debtor, and further loans were made by the creditor, plaintiff continuing in possession as manager of the dairy. Later a corporation was organized by the creditor and others, and the debtor transferred all the property to it, no provision being made for reconveyance to him. Four years after severing his connection with the company and giving up possession he brought an action for an accounting against the creditor in which he neither claimed the right of redemption nor any interest in the stock of the company. He did not make the corporation a party defendant. The value of the property transferred to the corporation was less than the amount of his debt to the creditor. *Held,* that the transfer of plaintiff's property to the corporation was not a mortgage but absolute and intended as an adjustment of the complex dealings between the parties.

Same—Compromise and Settlement—Effect on Remaining Indebtedness. 4. Defendant creditor having accepted the transfer by plaintiff of his property to the corporation organized by the former as a complete discharge of the latter's indebtedness, defendant was not entitled to judgment against plaintiff for any indebtedness owing over and above the value of the property.

*Appeal from District Court, Lewis and Clark County. W. H. Poorman, Judge.*

ACTION by S. S. Johnson against Knute Opheim, in which the Helena Holstein-Friesian Company intervened as defendant. Judgment for defendant and intervener, and plaintiff appeals. Modified and affirmed.

*Mr. Frank W. Mettler,* for Appellant, submitted a brief and argued the cause orally.

*Mr. C. A. Spaulding,* for Respondents, submitted a brief and argued the cause orally.

MR. CHIEF COMMISSIONER FELT prepared the opinion for the court.

In May, 1916, the plaintiff brought this action against the defendant Knute Opheim. He alleges that prior to the bringing of the action the defendant held the legal title to certain property belonging to the plaintiff as security for certain indebtedness due from the plaintiff to the defendant; that the

value of the property exceeded the value of the indebtedness; that the defendant had converted the property by wrongfully transferring the same to the Helena Holstein-Friesian Company, a corporation. He prays that the defendant be required to account for all transactions had between the parties and for the value of the property alleged to have been converted.

The defendant's answer alleges that there was no conversion of the property; that defendant is the sole owner of the Helena Holstein-Friesian Company; that the property still belongs to the plaintiff and is merely held by the corporation as security for plaintiff's indebtedness. He further alleges that the value of the property is not in excess of the indebtedness. The Helena Holstein-Friesian Company which intervened by leave of court makes similar contention to that of defendant. No reply nor answer to the petition in intervention was filed by plaintiff.

The cause was tried to the court sitting without a jury. Findings of fact and conclusions of law were made, and judgment and decree was duly entered thereon. By this decree the title to the property was ordered quieted in the intervener and personal judgment in the sum of $1,611.32 was rendered against the plaintiff in favor of the defendant Opheim. This judgment and decree was filed on the seventeenth day of June, 1920, more than four years after the action was begun. The case comes here on the plaintiff's appeal from the judgment and decree. The transcript on appeal contains only the pleadings, the court's findings of fact and conclusions, the judgment and decree and the notice of appeal.

The decision of this court remanding the cause to the district court of Lewis and Clark county, with directions to enter a decree foreclosing the defendant's mortgage, was made on the twenty-first day of February of this year. Thereafter a motion for rehearing was made, and this court, upon its own motion, propounded a certain question to the respective counsel of appellant and respondent and granted counsel leave to reargue the cause upon the question so propounded. At the

oral argument, counsel agreed that foreclosure could not be had in all respects according to the original opinion delivered in this case, and do justice to either party. The particular difficulty arises from the fact that the personal property, which constituted at least one-fourth of the security, is now out of existence. Further than that, however, counsel do not agree. It therefore becomes the duty of this court to make further disposition of the case. To avoid confusion and encumbrance of the record, the original opinion rendered on the twenty-first day of February is withdrawn and this opinion substituted.

Where the title to property belonging to one person is held [1] by another as security for indebtedness of the owner, the transaction is in legal effect a mortgage, regardless of its form. (19 R. C. L. 265; *Gassert* v. *Bogk*, 7 Mont. 585, 1 L. R. A. 240, 19 Pac. 281; *Grogan* v. *Valley Trading Co.*, 30 Mont. 229, 76 Pac. 211.) In preparing our original opinion we had only the pleadings from which to determine the nature of the transaction between the parties. By reason of the allegations of the answer and complaint in intervention which allegations were uncontradicted by any pleading filed by the plaintiff, we could reach no other conclusion than that the transaction represented a mortgage and must be foreclosed in accordance with our statute. Since no other disposition can properly be made without an examination of the testimony taken at the trial the court upon its own motion has ordered the record thereof certified to it for consideration. In the certified transcript of the stenographer's notes of the proceedings in the lower court we find reference of counsel to a stipulation that all matters pleaded in the answer and complaint in intervention shall be deemed denied. We are therefore free to disregard those allegations unless supported by the evidence and dispose of the case accordingly.

The situation disclosed by the record is as follows: On the [2, 3] sixth day of January, 1910, the plaintiff was the owner of certain real estate and personal property which he used in

the conduct of a dairy. On said date he borrowed $8,000 from the defendant. This indebtedness was evidenced by a promissory note due in five years and was secured by a mortgage upon the real estate. On the thirty-first day of December, 1910, in lieu of the mortgage, the plaintiff executed and delivered to the defendant an absolute deed to the real property and a bill of sale to the personal property, for the purpose of securing the amount of the original loan and such additional sums as might from time to time be advanced by the defendant to plaintiff. Under this arrangement various amounts were advanced from time to time until January 11, 1915. It was understood by both parties that the deed and bill of sale were in effect mortgages. On July 8, 1911, the defendant began an action to foreclose the rights and equities of the plaintiff in the real estate. As a result of this proceeding, the defendant became the purchaser of the real estate at sheriff's sale for the sum of $12,000, and a sheriff's deed to the same was duly executed on January 25, 1913. But it was agreed by the parties that this title should likewise be held by the defendant merely as security for the indebtedness due from the plaintiff. Under this arrangement further advances were made by defendant, and the plaintiff still remained in possession, making certain payments on the indebtedness at irregular intervals in varying amounts, the total of these installments representing a large sum. At no time was the exact amount of remaining indebtedness determined.

From time to time other property, both real and personal, was purchased and used in connection with the plaintiff's business. The defendant supplied the funds for all of these purchases. The title was usually taken in the name of the defendant directly. Often there was no definite understanding whether the transaction represented a loan to plaintiff who became the equitable owner and the title merely held by defendant as security, or an out-and-out purchase by defendant.

The plaintiff was in actual possession of all the property. A part of it he held as lessee and a part of it he operated as

the employee of defendant, without any agreement as to his compensation.  The product of this land the plaintiff used without any agreement as to its value.  Some of this was fed to livestock belonging to the plaintiff and a part of that of the defendant, with no accurate account kept of either.  In 1913 the plaintiff purchased a herd of registered Holstein cows with funds supplied by the defendant.  Although the bill of sale for this property ran to plaintiff and he stood on the books of the Holstein-Friesian Association as the registered owner of the animals, he signed a lease agreeing to pay the defendant a stipulated amount annually for their use.  No provision was made in the lease, nor was there any verbal agreement, as to whom the increase of the herd would belong.

On November 21, 1914, the Helena Holstein-Friesian Company was incorporated by the defendant and two other parties who subscribed for one share of stock each of the par value of one dollar.  On January 11, 1915, both parties joined in conveying to the corporation all of this property which had been used by the plaintiff.  The defendant took all of the corporate stock to recompense him for the amounts he had loaned to the plaintiff and advanced for the purchase of a large part of the property.  There was no agreement as to the value of the plaintiff's property conveyed to the corporation, nor as to the amount of his indebtedness to defendant.

The plaintiff testified that the original agreement was that he should have such portion of the capital stock as would recompense him for the value of his property over and above his indebtedness to defendant.  The latter denied the existence of any such agreement, but testified that the only agreement was that plaintiff was to be employed as manager and that he should have an option to purchase the entire capital stock of the corporation for the amount that the defendant had invested, which option was to expire on April 1, 1915, but might be extended from time to time upon a showing of good behavior on the part of the plaintiff.  This arrangement appears to have been acquiesced in by the plaintiff in accepting

the position of manager. It was terminated on the twenty-eighth day of April, when he was relieved of his duties in connection with the corporation, by reason of excessive intoxication. He then became entirely divested of all interest in the property or in the corporation.

This court has frequently held, beginning with *Gassert* v. *Bogk,* 7 Mont. 585, 1 L. R. A. 240, 19 Pac. 281, that one who asserts that a deed, absolute upon its face, is in fact a mortgage, must prove the same by clear and convincing evidence. It is usually the grantor who is attempting to establish that the transfer was intended as a mortgage. But we can see no reason for any different rule where the same claim is made by a grantee. The testimony of both parties is entirely inconsistent with the theory that the transfer was made to the intervener as security.

There is no allegation in either the complaint or answer, nor is there any testimony given by either party, of an agreement that the corporation would in any event reconvey the plaintiff's property to him. The plaintiff filed his complaint in this action more than a year after he had ceased to manage the corporation. During this time he had been entirely out of possession of the property he had conveyed to it. He filed an amended complaint more than four years after he had been out of possession. In neither of these pleadings did he claim any right of redemption or make any claim whatsoever of interest in the property or the stock of the corporation. He sought a money judgment against the defendant solely. He did not make the corporation, to which he had conveyed the property, a party.

We are therefore of the opinion that the transfer to the corporation was not intended as a mortgage. The most reasonable inference to be drawn from the entire record is that the formation of the corporation was an arrangement whereby one or the other of these parties could entirely withdraw from the complex situation in which the previous five years of their dealings had placed them.

[67 Mont. 126.]

There is no reason why such an agreement should not be enforced. (*Gassert* v. *Bogk, supra; Morrison* v. *Jones,* 31 Mont. 154, 177 Pac. 507; *Robitaille* v. *Boulet,* 53 Mont. 66, 161 Pac. 163; *Riley* v. *Blacker,* 51 Mont. 364, 152 Pac. 758.) [4] It is too much to ask a court of equity to declare a transaction to be other than what on its face it purports to be, and then attempt to untangle a snarl of complex dealings, when the parties themselves have disposed of the matter by a simple agreement. This disposition of the matter was probably more equitable than any decree that a court could make, should it attempt to balance every item of the account to a nicety. The trial court found that the value of the property which the plaintiff transferred to the corporation was less than the amount of his indebtedness to defendant. Hence the plaintiff cannot be entitled to any affirmative relief. On the other hand, the defendant did not testify to any intention on his part to hold the plaintiff chargeable for any indebtedness over and above the value of his property. He appears to have accepted the transfer to the corporation in complete discharge of the indebtedness. His version of the transaction would declare the account finally closed when the plaintiff failed to exercise his option.

We therefore recommend that the cause be remanded to the district court, with directions to modify the judgment by eliminating the personal judgment against plaintiff for deficiency, otherwise that the judgment be affirmed; each party to pay his own costs on this appeal.

Per Curiam: For the reasons given in the foregoing opinion, the cause is remanded to the district court, with directions to modify the judgment by eliminating the personal judgment against plaintiff for deficiency, otherwise the judgment is affirmed; each party to pay his own costs on this appeal.

*Modified and affirmed.*

Rehearing denied May 21, 1923.